# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

PNC BANK, N.A.,

           **Plaintiff,**

v.                                                **Case No:   6:15-cv-859-Orl-40DAB**

THE MONUMENT CENTRE, LLC,
BRIAN M. MARK and TANIA S. MARK,

           **Defendants.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT (Doc. 22)** |
| **FILED:** | **July 22, 2015** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

Plaintiff PNC Bank, N.A.[1] ("the Bank") seeks to recover a $337,000 deficiency judgment against Defendants, The Monument Centre, LLC, Brian M. Mark, and Tania S. Mark following the November 2013 sale of the real property on which Defendants had obtained a loan to purchase a mixed use commercial retail building.   Doc. 1.   Because the Court finds that a deficiency decree is warranted, it is respectfully recommended that the Motion for Default Judgment be **GRANTED**.

### Procedural History

---

[1]Plaintiff, PNC Bank, N.A., filed suit as successor-in-interest by merger to RBC Bank (USA), as successor-in-interest to Florida Choice Bank, as successor-in-interest to Public Bank.   For ease of reference, the Court will refer to these entities as "PNC Bank" or "the Bank."   Copies of the relevant documents evidencing the merger between RBC Bank (USA) and PNC Bank, N.A., the merger between RBC Bank (USA) and Florida Choice Bank, and the merger between Public Bank and Florida Choice Bank are attached to the Complaint (Doc. 1) as Exhibits I, J, K.

On May 28, 2015, Plaintiff PNC Bank filed suit against Defendants, The Monument Centre, LLC, (the "Borrower"), Brian M. Mark and Tania S. Mark ("the Guarantors") (collectively the "Obligors") seeking to collect on a $337,000 deficiency owed on an obligation following the sale of the real property in November 2013.   Docs. 1, 18-1.   The Bank has filed returns of service executed on May 30, 2015.   Docs. 11, 12, 13.   Defendants failed to respond and the Clerk entered defaults on July 16, 2015.   Docs. 15, 16, 17.   The Bank filed its first Motion for Default Judgment on July 22, 2015 (Doc. 18) which the Court denied without prejudice on December 24, 2015 because the loan documents supplied as exhibits to the Complaint had several deficiencies that appeared to make them unenforceable.   Doc. 19.   The Bank was granted leave to reassert it with an appropriate memorandum of law (if warranted) setting forth the basis for enforcement of the deficiency judgment, given the issues raised with the Loan Documents.   Doc. 19.

On February 25, 2016, when the Bank had not timely refiled the motion, District Judge Byron entered an Order to Show Cause why the case should not be dismissed for failure to prosecute. Doc. 20.   On March 10, 2016, the Bank filed its Response to the Order of Show Cause (Doc. 21) and filed its Renewed Motion for Final Default Judgment.   Doc. 22.   The time for a response to the Motion has passed, and the matter is ripe for decision.

## ANALYSIS

### A.   Service of Process

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise properly appear pursuant to Federal Rule of Civil Procedure 55(b)(2); *DirecTV, Inc. v. Griffin*, 290 F.Supp.2d 1340, 1343 (M.D. Fla. 2003).   As set forth in the Court's previous Order, service on the Defendants in this case was proper.

Federal Rule of Civil Procedure 55(a) provides that if a party fails to plead or otherwise defend as provided by the rule, the clerk shall enter default upon the appropriate showing.   Fed. R.

Civ. P. 55(a).   Under Federal Rule of Civil Procedure 4(e)(1), service of a federal Complaint is accomplished as follows:

> **(e) Service Upon Individuals Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a district of the United States by:
>> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made. . .
>> (2) doing any of the following:
>>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. Pro. 4(e).   The Affidavit of Service indicates that service was made on Brian Mark personally. Doc. 13.   Service on Tania Mark was made via service on Brian Mark, her spouse (*see* Doc. 11) which conforms to Rule 4(e)(2)(B) and Florida Statute § 48.031(2)(a).

Service on a limited liability company can be made by any manner accepted in the state or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed.R.Civ.P. 4(h)(1)(A), (e)(1).   Under Florida law, process may be effected on a domestic or foreign limited liability company ("LLC") such as The Monument Centre, LLC, by serving the LLC's registered agent.   Fla. Stat. § 48.062.

In this case, the Affidavit of Service indicates that service was made on Brian Mark as a "member" of The Monument Centre, LLC.   Doc. 12.   Although the Affidavit of Service is not clear as to Brian Mark's status other than "member," the Florida Department of State, Division of

Corporations[2], reports that Brian M. Mark is the registered agent and a Managing Member of The Monument Centre, LLC.   Thus, The Monument Centre, LLC was properly served.

The Court finds that Defendants' failure to timely respond to the Complaint and subsequent entry of default served to admit the well pled allegations of Plaintiffs' Complaint, including the Bank's claims to enforce certain provisions in the promissory note, guaranty agreement, and related agreements, to recover the deficiency.   *See, e.g., Cotton v. Massachusetts Mut. Life Insurance Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (in defaulting, defendants "admit the plaintiff's well-pleaded allegations of fact"); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (same).

## B.  Factual Background[3]

On February 22, 2006, the Bank and the Borrower, The Monument Centre, LLC, entered into a $600,000 Promissory Note and a Commercial Security Agreement which granted a security interest in the rents and the real property in Osceola County, Florida, more specifically described in the Mortgage as located at 13-19 Monument Avenue, Kissimmee, Florida 34741 (the "Real Property").   Doc. 1-2 at 2, 5, 18; Docs. 22-1, 22-4.   On September 22, 2006, the Borrower also entered into a Real Estate Mortgage with the Bank which granted a lien and security interest in the Real Property, which was recorded in Official Records Book 3075, beginning at Page 2578, in the Official Records of Osceola County, Florida.   Doc. 1-2; Doc. 22-2.   The Obligors also executed a Forbearance Agreement, on June 22, 2009, and the First Amendment to Forbearance Agreement dated December 15, 2010.   Doc. 1-2 at 21-44; Docs. 22-5 & 22-6.   In addition, the Guarantors executed a "Guaranty Agreement," on February 22, 2006.   Doc. 1-2 at 15; Doc. 22-3.   These documents taken together comprise the Loan Documents for the Obligors' obligations owed to the Bank (the "Obligation") under Loan Number 605502053.   Doc. 1-2 at ¶¶ 11-12.

---

[2] *See* www.sunbiz.org.

[3] Throughout the text, capitalized terms are defined in the documents to which they refer, each filed as Exhibits to the Complaint.   Doc. 1 through Doc. 1-2.

The Obligors defaulted pursuant to the terms and conditions of the Loan Documents when they failed to make full payment on the Obligation at maturity on June 22, 2011.   Doc. 22-7, Affidavit of John A. Grohovsky, Vice President and Asset Manager[4].   As a result of the default, the Bank made demand on the Obligation on May 20, 2013. S*ee* Doc. 1-2 at 46.

The real property and improvements securing the Obligation, located at 13-19 Monument Avenue, Kissimmee, Osceola County, Florida 34741 (the "Mortgaged Property"), was subsequently sold on November 22, 2013, with the Bank receiving the proceeds of the sale in the amount of $338,000, and applying the proceeds of the sale to the Obligation.   Because the proceeds of the sale of the Mortgaged Property were insufficient to cover the full amount of the Obligation and the Bank did not release the Obligors from the outstanding balance of the Obligation upon sale of the Mortgaged Property[5], the Obligation was in default in the aggregate amount of $337,237.71, itemized by the Bank as follows:

| | |
|---|---|
| Principal: | $311,388.01 |
| Interest (as of 7/22/15 at $42.66 per diem): | $ 25,849.70 |
| TOTAL: | $337,237.71 |

According to the Bank, no payment for the Obligation in full has been received, from or on behalf of the Obligors; additionally, interest continues to accrue on the principal amount of the Obligation. *Id.* ¶ 8.   The Bank's computation of interest is based upon the non-default contract rate set forth in the Loan Documents[6].   *Id.*   The Bank represents that it owns and holds the originals of the Loan Documents, to the extent required by law to bring these causes of action. *Id.* ¶ 12.   The Bank

---

[4]   The Bank represents that the existence of additional contractual defaults under the Loan Documents is apparent; however, the enumeration of additional occurrences and conditions of default was unnecessary in the Motion, given the Obligors' payment default.   Doc. 22 ¶ 6.

[5]   *See* Doc. 1-2 at 51 (estoppel letter dated November 20, 2013).

[6]   The Bank represents that it reserved the right to seek and recover interest at the highest rate allowed pursuant to the Loan Documents and Florida Statutes § 687.071, and other applicable law. The Bank also represents that it has a contractual right to recover additional accruing fees pursuant to the terms of the Loan Documents and all such rights are reserved to the extent not expressly waived.

represents that it has not modified the status of the lending relationship since acceleration and demand, and does not intend to do so.   *Id* ¶ 17.

    *2. Loan Documents*

    As the Court explained in denying the original Motion for Default Judgment based on issues with the documents, some of the Loan Documents that the Bank sought to enforce *were not signed* by the Bank, without any justification from the Bank:

> The Bank's claims are based on the documents submitted as exhibits to the Complaint, many of which have documentation issues.   As represented by the Bank, on February 22, 2006, the Bank and the Borrower, The Monument Centre, LLC, entered into a $600,000 Promissory Note for purchase of a commercial building. Doc. 1-2 at 2.   As an initial matter, a majority of the copies of the documents are of such poor quality that they are barely legible[7].
>
> More importantly, several of the key agreements are unsigned.   The Promissory Note is signed by Brian M. Mark and Tania S. Mark as "MGRM" for the Borrower The Monument Centre, LLC, however, the Note is not signed by anyone on behalf of the Bank, although the name Andy Piscotto, Vice President, is typed under the blank signature line.   *Id.*   The Promissory Note references the Mortgage on the real property in Osceola County, Florida, located at 13-19 Monument Avenue, Kissimmee, Florida 34741 (the "Real Property") which is also signed by Brian Mark and Tania Mark for The Monument Centre, LLC on February 22, 2006.   Doc. 1-2 at 5-11.
>
> Although Brian Mark and Tania Mark signed a Commercial Security Agreement on behalf of The Monument Centre, LLC, which purportedly granted a security interest in the rents from the Property, the document (again) was not signed by the Bank's representative, Andy Piscotto, Vice President.   *Id.* at 18.   The most astounding failure in this set of documentation is within the signatures on the Forbearance Agreement dated June 22, 2009 with PNC Bank's predecessor, RBC Bank (USA); the agreement is NOT signed by anyone from RBC Bank although the name of "James E. Garner, Jr." as "Vice President" is typed in below the signature line for him to sign on behalf of RBC Bank.   Instead, where his signature should have been, Tania S. Mark signed and the signature (although above a line designated for James E. Garner) was *witnessed* by two other individuals.   Brian Mark signed on behalf of The Monument Centre LLC as its Managing Member.   *Id.* at 12.

Doc. 19.   The Bank provides much clearer copies of the Loan Documents as attachments to its

---

[7]Copies of the Loan Documents submitted as exhibits to the original Motion for Default Judgment were "barely legible" because they appear to have been copies of copies.   The Bank has submitted cleaner copies of the originals as exhibits to its Renewed Motion (Doc. 22) and their legibility is no longer at issue.

Renewed Motion (Doc. 22).

In its Renewed Motion for Default Judgment, the Bank concedes that "some of the Loan Documents may not be signed by anyone on behalf of the Bank," but argues that "this alone does not invalidate any of the Loan Documents or preclude the Bank from receiving a final default judgment on all counts of the Complaint, as a representative of the Borrower signed all relevant Loan Documents on its behalf."   Doc. 22 at 9.

The Bank cites in support a case in which a car dealer was able to enforce against the signing party the arbitration provision of a sales agreement that the dealer had inadvertently neglected to sign because "generally, it is enough that the party against whom the contract is sought to be enforced signs it."   *Dodge of Winter Park, Inc. v. Morley*, 756 So. 2d 1085, 1085-86 (Fla. 5th DCA 2000). "[A] document executed by the party against whom the contract is sought to be enforced is presumptively valid even in the absence of the enforcing party's signature where the events surrounding the contract's execution support a valid contract."   *CT Miami, LLC v. Samsung Electronics Latinoamerica Miami, Inc.*, No. 3D15-641, 2015 WL 5247160, *9 (Fla. 3d DCA Sep. 9, 2015).   "A contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract."   *Id.* (quoting *Integrated Health Servs. Of Green Briar, Inc. v. Lopez-Silvero*, 827 So. 2d 338, 339 (Fla. 3d DCA 2002)and *Alterra Healthcare Corp. v. Bryant*, 937 So. 2d 263, 270 (Fla. 4th DCA 2006) (holding that a trial court correctly determined an agreement was binding despite one party's failure to sign the document where the parties performed under the terms of the contract)).   It is undisputed that the Bank provided $600,000 as set forth in the Promissory Note and performed under the Note.

In this case, several documents comprise the Loan Documents.   Despite the issues with the earliest documents (as discussed in the quoted Report and Recommendation above), the subsequently-signed First Amendment to Forbearance Agreement (Doc. 22-6) was signed on

December 15, 2010 by Obligors and James E. Garner, Jr. as Vice President of the Bank's predecessor RBC Bank (USA).   In the First Amendment to Forbearance Agreement, the Obligors agreed that they were bound by the previous agreements, *i.e.,* the February 22, 2006 Promissory Note, and the June 22, 2009 Forbearance Agreement.   Doc. 22-6 at 2.   As such, the Obligors are bound by the Loan Documents as asserted by the Bank.

### C.   Breach of the Promissory Note and the Guaranty Agreement

Because default has been properly entered against the Obligors, they are deemed to have admitted the allegations made in the Bank's Complaint, *i.e.*, Counts I and II.   *See* Doc. 1. Count I seeks damages against the Borrower for breach of the Loan Documents; Count II, seeks damages against the Guarantors resulting from the default pursuant to the terms of the Loan Documents. Doc. 1.

The Bank seeks a default judgment on its two claims for breach of contract: (1) breach of the Loan Documents against the Borrower on the Note (Count I) and (2) breach of the Guaranty Agreement against the Guarantors (Count II).   "A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citations omitted); *Nishimatsu Constr. Ltd.*, 515 F.2d at 1206 ("There must be a sufficient basis in the pleadings for the judgment entered.").

A breach of contract cause of action is established under Florida law if there is: (1) a valid contract; (2) a material breach of a term of the contract; and (3) damages suffered by the aggrieved party.   *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)); *Ameripath, Inc. v. Wetherington*, 2011 WL 1303804, *4 (S.D. Fla. April 4, 2011); *Grillasca Amerada Hess Corporation*, 2006 U.S. Dist. 82814 (M.D. Fla. 2006); *Barbara G. Banks, PA v. Thomas D. Lardin, PA*, 938 So.2d 571 (Fla. 4th DCA

2006); *Abbott Laboratories, Inc. v. General Electric Capital*, 765 So. 2d 737 (Fla. 5th DCA 2000). An action for breach of a promissory note is the same as a breach of a contract action. *See Wane v. Lane Corp.*, Case No. 8:11-cv-212 6-T-33AEP, 2013 WL 672574, *10 (M.D. Fla. Feb. 23, 2013).

A breach of a guaranty agreement is a "straightforward state-law breach of contract claim." *Reiter Petroleum, Inc. v. Gallant*, Case No. 11–61254–CIV, 2011 WL 4044392, *2 (S.D. Fla. 2011) (citing *Modern Gaming, Inc., v. Malone*, No. 6:10–cv–182–Orl–28DAB, 2010 WL 724434 (M.D. Fla. 2010)). Under Florida law, a breach of a guaranty arises upon the default by the original borrower and subsequent refusal to pay by the guarantor, and summary judgment is appropriate if there are no genuine issues of material fact at issue. *Brunswick Corp. v. Creel*, 471 So. 2d 617, 619 (Fla. 5th DCA 1985). "A suit on a guaranty and a foreclosure action are not inconsistent remedies, and therefore pursuit of either of those remedies without satisfaction is not a bar to the pursuit of the other. *Gottschamer v. August, Thompson, Sherr, Clark & Shafer, P.C.*, 438 So. 2d 408, 409 (Fla. 2d DCA 1983). Under Florida law "where [a] guaranty is absolute, the guarantor becomes liable upon non-payment by the principal, and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors." *Mullins v. Sunshine State Service Corp.*, 540 So.2d 222, 223 (Fla. 5th DCA 1989).

In this case, the parties executed several contracts. The Bank agreed to lend the Borrower, The Monument Centre, LLC, the principal amount of $600,000 in the Promissory Note. The Borrower executed and delivered the Promissory Note on February 22, 2006, subsequently modified by the Forbearance Agreement on June 22, 2009 and the First Amendment to Forbearance Agreement on December 15, 2010, in connection with the lending relationship between the Borrower and the Bank. The Promissory Note provides that the Borrower will be in default if the Borrower "fails to make a payment on time or in the amount due." Doc. 22-1. If the Borrower is in default under the Promissory Note, the Bank "may demand immediate payment of all [the

Borrower] owes" under the Note and "may use any remedy [the Bank] has under state or federal law."   Doc. 22-1 at 3.

Pursuant to the terms of the Forbearance Agreement dated June 22, 2009, the Bank agreed to forego pursuing its rights for one year, provided that the obligations required in the Loan Documents were satisfied; however, the forbearance period would terminate at the Bank's option if there were further defaults under the Loan Documents or the Forbearance Agreement.   Doc. 22-5 at 6-8.   Under the terms of the First Amendment to Forbearance Agreement dated December 15, 2010 and effective as of June 22, 2010, the Bank agreed to forego pursuing its rights for another year–until June 22, 2011—provided that the obligations required in the Loan Documents were satisfied.   Under either Forbearance Agreement, however, the forbearance period would terminate at the Bank's option if there were further defaults under the Loan Documents or the Forbearance Agreements.   Doc. 22-5 at 6-8; Doc. 22-6 at 2-4.

The Bank made demand on the Obligation on May 20, 2013 (the "Demand Letter").   Doc. 1-2 at 46 (Exh. G).   The real property and improvements securing the Obligation, located at 13-19 Monument Avenue, Kissimmee, Osceola County, Florida 34741 (the "Mortgaged Property"), was sold on November 22, 2013, with the Bank receiving the proceeds of the sale in the amount of $338,000, and applying the proceeds of the sale to the Obligation; however, the proceeds of the sale of the Mortgaged Property were insufficient to cover the full amount of the Obligation, which stood at $337,237.71 as of July 22, 2015.   Doc. 22-7 (Grohovsky Aff.).   Turning to the Guaranty Agreement, the Guarantors executed a Guaranty Agreement, which unconditionally guaranteed payment of all indebtedness and liabilities evidenced by or arising under the Loan Documents. Doc. 22-3.   The Borrower has breached the terms of the Loan Documents, and the Guarantor has breached the Guaranty Agreement by failing to pay all indebtedness and liabilities of the Obligation, as required under the Loan Documents.   Following the sale of the Mortgaged Property, the Bank

did not release the Obligors from the outstanding balance of the Obligation, as noted in an estoppel letter dated November 20, 2013.   Doc. 1, Exh. H.· The Bank has met its burden of proving the elements of its claims and is entitled to default judgment against the Borrower and the Guarantors on breach of the Loan Documents.

### D.  Deficiency

The Bank seeks a default judgment on the as-yet unpaid deficiency amount of the Obligation. The granting or denying of a deficiency decree is within the court's "'sound judicial discretion,' which must be supported by established equitable principles as applied to the facts of the case." *Chidnese v. McCollem*, 695 So.2d 936 (Fla. 4th DCA 1997) (citing *Norwest Bank Owatonna, N.A. v. Millard*, 522 So.2d 546, 547 (Fla. 4th DCA 1988)).   "This discretion is not unbridled, as the granting of a deficiency decree is the rule rather than the exception."   *Id.* (citing *S/D Enters., Inc. v. Chase Manhattan Bank*, 374 So.2d 1121, 1122 (Fla. 3d DCA 1979)).   The secured party has the burden of proving that the fair market value of the property was less than the total debt determined by the final judgment. *See Norwest Bank*, 522 So.2d at 547.

Generally, where it is clear that the total debt secured by a lien on property is more than the fair market value of that property at the date of the foreclosure sale, the granting of a deficiency decree is the rule rather than the exception. *Ahmad v. Cobb Corner, Inc.*, 762 So.2d 944, 946 (Fla. 4th DCA 2000); *cf.* Fla. Stat. § 702.06 (applying to mortgage foreclosures, "[T]he entry of a deficiency decree for any portion of a deficiency, should one exist, shall be within the sound discretion of the court; however, in the case of an owner-occupied residential property, the amount of the deficiency may not exceed the difference between the judgment amount, or in the case of a short sale, the outstanding debt, and the fair market value of the property on the date of sale.")   A deficiency judgment should be granted "unless there are facts and circumstances creating equitable considerations upon which a court should deny the deficiency decree in the exercise of its

discretion." *S/D Enters., Inc. v. Chase Manhattan Bank*, 374 So.2d 1121, 1122 (Fla. 3d DCA 1979); *Chidnese*, 695 So.2d at 938 ("When a court does not state any legal or equitable principles justifying an award for less than the full amount of the deficiency, it is an abuse of discretion."). The mortgagor may offer evidence to refute the mortgagee's contention, and then the trial court must determine whether there are any "equitable considerations" that warrant a reduction of the actual deficiency. *Chidnese*, 695 So.2d at 938 (citing *Addison Mortgage Co. v. Weit*, 613 So.2d 104 (Fla. 3d DCA 1993); *Federal Deposit Ins. Corp. v. Morley*, 915 F.2d 1517 (11th Cir. 1990)). Because the Obligors have defaulted, they have not asserted any equitable defenses.

The burden-shifting framework of Florida law on deficiency judgments begins with the "legal presumption" that "the foreclosure sale price equals the fair market value of the property." *Vantium Capital, Inc. v. Hobson*, 137 Soc. 3d 497, 499-500 (4th DCA 2014) (citing *Thunderbird, Ltd. v. Great Am. Ins. Co.*, 566 So.2d 1296, 1299 (Fla. 1st DCA 1990)). "Therefore, once the party seeking a deficiency judgment introduces evidence of the foreclosure sale price, the burden shifts to the judgment debtor to present evidence concerning the property's fair market value." *Liberty Bus. Credit Corp. v. Schaffer/Dunadry*, 589 So.2d 451, 452 (Fla. 2d DCA 1991). "In the absence of such evidence, the trial court has the power to act upon the assumption that the sale price reflects the fair market value." *Vantium*, 137 Soc. 3d at 499 (holding that debtors had failed to meet their burden to rebut the presumption that the foreclosure sale price was the fair market value where they failed to appear at the hearing did not present any counter-evidence, and lender had presented appraisers' affidavits concerning the fair market value of the properties) (quoting *Fara Mfg. Co., Inc. v. First Fed. Sav. & Loan Ass'n of Miami*, 366 So.2d 164, 165 (Fla. 3d DCA 1979)).

In this case, the Mortgaged Property was sold via a short sale rather than at a foreclosure sale, but the guidance regarding the burden-shifting is equally applicable. *See Branch Banking and Trust Co. v. Park Circle, LLC*, No. 2:13-cv-25-FtM-38CM, 2014 WL 1870606, *8 (M.D.Fla. May

8, 2014) (applying the law regarding a deficiency decree following a foreclosure sale to a situation where the property was sold at a short sale). The Obligors have failed to respond to the Complaint and, thus, have failed to present any competent evidence that the Mortgaged Property was sold for less than the market value. Moreover, as in any short sale, it was conducted at the request of the Obligors, and the Bank did not take title to the Mortgaged Property other than to approve the short sale as holder of the Promissory Note[8]. *See, e.g., id.* at *8 ("[I]t was not BB & T that initially broached the idea of a short sale but Miller, as president of the LLC. Thus, the short sale was not done at the behest of BB & T, but the president of Park Circle, LLC.").

The Bank is entitled to a deficiency judgment against the Obligors for the amount of the indebtedness that exceeds the payoff from the short sale.

### E. Damages

The Bank contends that the Borrower breached the Loan Documents with the Bank by failing to pay in full the June 2011 installment payment due under the Loan Documents, and all payments thereafter, and this failure has caused the Bank to suffer damages in the amount of $347,134.83 as of March 10, 2016. Doc. 22-7; Doc. 1 ¶¶ 13-16.

Pursuant to Federal Rule of Civil Procedure 55(b)(1):

> If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk-on the plaintiff's request, with an affidavit showing the amount due- must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

Fed. R. Civ. P. 55(b)(1).

In making its determination as to the amount and character of damages to be awarded, the Court may rely upon affidavits or documentary evidence to establish the proper amount of damages.

---

[8] *See* Doc. 1-2 at 51-52.

*Solis v. J.W. Buckholz Traffic Eng'g, Inc.*, 3:11-cv-248-J-34MCR, 2012 WL 6761600 *1, *3 (M.D. Fla. Dec. 6, 2012).   In entering a final default judgment, it is not necessary for the Court to hold an evidentiary hearing, if damages are liquidated or discernible from documentary evidence or affidavits. *See Shandong Airlines Co., Ltd. v. CAPT, LLC*, 650 F. Supp. 2d 1202, 1207 (M.D. Fla. 2009); *Directv, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1343-44 (M.D. Fla. 2003). An evidentiary hearing is not a *per se* requirement for entry of a default judgment on damages, and may be omitted if all essential evidence is of record. *See S.E.C. Smyth*, 420 F.3d 1225, 1232, n. 13 (11th Cir. 2005).

Here, the Bank seeks as its damages the deficiency amount that was not repaid by the Obligors pursuant to the terms of Loan Documents or repaid through the short sale, and therefore remains due. The Bank has provided the Affidavit of Amounts Due and Owing of John A. Grohovsky setting forth the exact principal amount remaining due under the Loan Documents as well as the exact amount of interest owed under the Promissory Note; such amounts have been sworn to by the Bank's corporate representative and are derived solely from the Loan Documents. Doc. 22-7.   Mr. Grohovsky's Affidavit sets forth a sum that can be made certain by computation, as required under Rule 55(b)(1), set forth in the table below.   *See Solis*, 2012 WL 6761600 at *3 ("As Plaintiff has established the amount of its damages through an affidavit, . . . the Court is able to establish the amount of the default judgment without the necessity for an evidentiary hearing").

| | |
|---|---|
| Principal Balance | $311,388.01 |
| Interest (as of 7/22/15 at $42.66 per diem) | $ 25,849.70 |
| TOTAL: | **$337,237.71** |

It is respectfully **RECOMMENDED** that PNC Bank's Motion for Final Default Judgment be **GRANTED** on Counts I and II of the Complaint and a deficiency decree be entered for $311,388.01 plus interest.

**F.   Attorneys' Fees and Costs**

The Bank seeks to recover its attorney's fees and costs.   Pursuant to the terms and conditions of the Promissory Note described in the Complaint, the Bank is entitled to recover its attorneys' fees and costs from the Obligors.   The Promissory Note provides:

> Mortgagor agrees to pay all costs and expenses Incurred by Lender in enforcing or protecting Lender's rights and remedies under the Mortgage, including but not limited to, reasonable attorneys' fees, court costs, and other legal expenses.

Doc. 22-2.   In addition, the Guaranty Agreement provides:

> The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

Doc. 22-3.   The Forbearance Agreement also provides:

> Attorneys' Fees. If any party institutes an action against another party relating to the provisions of this Agreement or any default hereunder, the unsuccessful party to such action will reimburse the successful party for the reasonable attorneys' fees, disbursements and other litigation expenses incurred by the successful party.

Doc. 22-5.   The First Amendment to Forbearance Agreement provides:

> If either party initiates or is made a party to legal or other dispute resolution proceedings (whether judicial, administrative, declaratory, in arbitration, or otherwise) in connection with this First Amendment, then the non-prevailing party in those proceedings will pay the costs and attorney's fees, including the costs and attorney's fees of appellate proceedings, incurred by the prevailing party. This obligation to pay attorney's fees and costs will apply also to settlements of disputes and to collection efforts.

Doc. 22-6.   All of the applicable Loan Documents provide for attorney's fees and costs.

The Bank has supplied the Affidavit of Costs and Affidavit of Attorneys' Fees of John A. Anthony, a managing member in the law firm of Anthony & Partners, LLC, showing that the Bank has incurred reasonable attorneys' fees and costs in the amount of $4,537 in connection with this action[9] as of March 10, 2016. Doc. 22-8.   The Bank asserts that the fees requested are reasonable

---

[9] Although Mr. Anthony's Affidavit states the amount of fees and costs total $4,537, the Motion contends that the amount totals $5,697.55 (Doc. 22 ¶ 44), which arithmetically greatly exceeds the total for the number of hours and hourly rates set forth in the Affidavit of $4,228.

and meet the factors established in the applicable precedent. *See e.g. Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988); *Reynolds v. Alabama Dep't. of Transp.*, 926 F. Supp. 1431 (M.D. Ala. 1997); *Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985); *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 835 (Fla. 1990); *Johnson v. Georgia Hwy. Express, Inc*., 488 F.2d 714 (5th Cir. 1974).

The Affidavit of Attorneys' Fees states Mr. Anthony's experience as a twenty-six year AV rated attorney, and the reasonable hourly rates sought for attorney work ($175) and paralegal work ($90), but does not provide a summary of the timekeepers or set forth the work for which the fees are sought.   It is not clear whether Mr. Anthony was the sole timekeeper in the case (which seems unlikely since another attorney at the firm, Ms. Doucette, has appeared in the case) who incurred 22 hours set forth in the affidavit.   Doc. 22-8.   While the rates appear to be very reasonable and at the low end of the scale, no timesheets have been filed in support of the attorney time or paralegal time expended.   It is respectfully **RECOMMENDED** that attorney's fees be awarded[10] to the Bank on a properly documented motion.

### G.   Other matters

The Bank requests this Court to enter an order requiring the Obligors to complete Florida Rules of Civil Procedure Form 1.977 Fact Information Sheet in aid of execution pursuant to Florida Rule of Civil Procedure 1.560(c).   *See* Doc. 22 ¶52.   Generally, a federal court is not bound by state court rules, however proceedings supplementary to and in aid of judgment or execution must accord with the procedure of the state where the court is located, and federal statues govern to the extent any apply.   Fed. R. Civ. P. 69(a).   The Bank has not cited any federal legal authority requiring the Fact Information Sheet in this Court.

### SUMMARY

---

[10]  Costs are taxed by the Clerk on a properly filed bill of costs.   Fed. R. Civ. P. 54(d)(1).

Having reviewed the record in the case, it is respectfully **RECOMMENDED** that PNC Bank's Motion for Final Default Judgment be **GRANTED** and Final Judgment be entered for PNC Bank on Counts I and II of the Complaint; a deficiency decree be entered for $311,388.01 plus interest of $25,849.70 as of July 22, 2015, at $42.66 per diem; and finding the Bank is entitled to its attorneys' fees on a properly filed motion filed within 14 days of entry of judgment[11].

PNC Bank is **DIRECTED** to submit a proposed final judgment in accordance with this Report and Recommendation, with the current calculation of interest.

**DONE** and **ORDERED** in Orlando, Florida on July 27, 2016.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[11] *See* Fed.R.Civ.P. 54(d)(2).